UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT HOFFMAN,
     Plaintiff,

v.

CODY CRITES, JAVAUGHN
ACREE-MANUAL, and JOHN
MORRELL,
     Defendants.
_____/

Case No.: 21-10703

Mark A. Goldsmith
United States District Judge

Curtis Ivy, Jr.
United States Magistrate Judge

**REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (ECF No. 18)**

## I.      PROCEDURAL HISTORY

Plaintiff Robert Hoffman filed this prisoner civil rights suit on March 18, 2021, without the assistance of counsel, alleging he was retaliated against for engaging in Constitutionally protected conduct in violation of the First Amendment.  (ECF No. 1).  On July 27, 2021, Plaintiff filed a motion for partial summary judgment on Count II of the amended complaint.  (ECF No. 18).  In Count II, he alleges defendant Cody Crites issued him an Interference of the Administrative Rules misconduct ticket in retaliation for his August 13, 2020, verbal and written grievances.  (ECF No. 17, PageID.51).

This case was referred to the undersigned for all pretrial proceedings.  (ECF No. 13).  Plaintiff's motion is now fully briefed (ECF Nos. 22, 24) and ready for report and recommendation.

For the reasons discussed below, the undersigned **RECOMMENDS** that Plaintiff's Motion for Partial Summary Judgment be **DENIED**.

## II.    FACTS

During the time relevant to the events alleged in the verified amended complaint, Plaintiff was in the custody of the Michigan Department of Corrections ("MDOC") housed at the Parnall Correctional Facility ("SMT").  The defendants were employed by MDOC at SMT.  (ECF No. 17, PageID.46-47).  At issue in this motion for partial summary judgment is Plaintiff's claim that defendant Crites, a Lieutenant at SMT, retaliated against him for grieving an issue and threating a lawsuit.  Plaintiff alleges Crites wrote a misconduct ticket against him in retaliation for protected conduct.

By way of background, Plaintiff alleged he engaged in multiple instances of protected conduct after August 13, 2020, which are not the subject of this report and recommendation—sending informal and formal grievances, sending an email, engaging in a hunger strike, and refusing medical care.  (*See* ECF No. 18, PageID.61-62).  In his reply brief, Plaintiff stated, "Hoffman will only address protected conduct as to his 08-13-20 grievances', all other claims of protected

2

conduct are disputable at this point so Hoffman abandons them as to his partial motion for summary judgment." (ECF No. 24, PageID.233). As a result, the undersigned will only address protected conduct as it relates to Plaintiff's written and verbal grievances and threat of a lawsuit on August 13, 2020.

The parties agree that as of August 13, 2020, SMT had a policy of keeping inmates from different units separated in light of the COVID-19 pandemic. (*See* ECF No. 24, PageID.243-44). Nevertheless, on that date, when Plaintiff was summoned to the Control Center to pick up legal mail, there were approximately 15-20 inmates from different units collected in the area. (ECF No. 17, PageID.47). Plaintiff promptly made a verbal complaint related to the mix of inmates to defendants Crites and Manual, who were stationed at that area of the prison. (*Id.* at PageID.48). Plaintiff alleges his complaint was ignored. (*Id.*). According to Crites, what took place when Plaintiff first arrived at the area was not quite a conversation between the parties. Crites maintains Plaintiff appeared angry and he heard Plaintiff state "fucking" and "idiots." (ECF No. 22-2, PageID.133, at ¶ 4). This particular instance of voicing his displeasure at the policy violation is not the verbal grievance on which Plaintiff relies as part of his protected conduct. (*See* ECF No. 18, PageID.66). Following voicing his displeasure, Plaintiff returned to his housing unit.

Later that evening, Crites called Plaintiff back to the Control Center to discuss his complaint.  Plaintiff stated his grievance related to the COVID-19 policy violation.  He informed Crites he would be writing a formal grievance and sending informal grievances to the SMT Warden, Deputy Warden, and Assistant Deputy Warden about the policy violation.  (ECF No. 17, PageID.48; ECF No. 18, PageID.73, at ¶ 3).

What occurred during that discussion is disputed.  Plaintiff insists the issue was not resolved during that evening meeting.  (ECF No. 17, PageID.48).  He maintains Crites attempted to get him to agree to have his legal mail sent directly to his housing unit with his regular mail, but Plaintiff refused.  Plaintiff "assured" Crites he would be filing formal and informal grievances.  (ECF No. 18, PageID.75, at ¶ 11).  Crites, on the other hand, insists he explained the facility's processes for legal mail and the COVID-19 policy to Plaintiff, at which point he says Plaintiff stated he understood and agreed the issue was resolved.  (ECF No. 22-2, PageID.134, at ¶ 7).  Despite having resolved the issue, Crites maintains Plaintiff threatened to sue over the policy violation.  (ECF No. 22-2, PageID.134, at ¶ 8).  Crites asserts he informed Plaintiff he would issue a Class II Misconduct for Interference with the Administration of Rules if Plaintiff "continued his threatening behavior and abuse of the grievance process."  (ECF No. 22-2, PageID.134, at ¶ 9).

Attached to Plaintiff's brief are an informal grievance dated August 13, 2020, addressed to an Administrative Assistant at SMT (ECF No. 18, PageID.78) and a formal grievance dated August 13, 2020, (*id.* at PageID.79), both concerning the collection of prisoners in the Control Center.[1]  In the formal grievance, Plaintiff detailed the alleged policy violation and included he spoke with Crites concerning the matter, but the issue was not resolved as Plaintiff refused to allow his legal mail to be sent directly to his unit.  Attached to Plaintiff's reply brief is a memorandum from Crites dated August 19, 2020 in response to Plaintiff's formal grievance.  In the memorandum, Crites repeated his version of events in that he and Plaintiff resolved the issue that occurred on August 13, 2020, but Plaintiff still insisted he would sue over the matter.  (ECF No. 24, PageID.261).  The grievance was denied through all three steps.  At Step I, on August 19, 2020, the responding prison official wrote the "visiting room is a very large area making this an adequate area for prisoners to be separated by the six feet for social distancing.  On 8/14/20, the facility was back to normal operations. . . .  The change in movement was pre-planned resulting in the resolution of prisoner Hoffman's initial complaint."[2]  (*Id.* at PageID.257).  The statement that the prison was back to

_____

[1] Plaintiff alleges the exhibits attached to his brief "are true copies of the originals." (ECF No. 19, PageID.75-76).  Defendant Crites contested none of the exhibits.

[2] The memorandum and grievance response were submitted for the first time in Plaintiff's reply brief.  The undersigned considers them because: (1) Crites no doubt has equal access to his own memorandum and grievance responses and was aware of their existence, (2) Crites did not file a motion for leave to file a sur-reply to address or contest the newly submitted evidence, and

normal operations on August 14, 2020 contradicts Crites' interrogatory response in

which he stated the prison was on restricted movement as of August 25, 2020.

(ECF No. 24, PageID.244).

On August 20, 2020, Crites wrote a Class II Misconduct for "Interference

with the Administration of Rules" against Plaintiff with a violation date of August

13, 2020.  Crites described the violation as follows:

> On the above time and location [Control Center visiting room], prisoner Hoffman was interviewed for a concern about legal mail.  The issue prisoner Hoffman mentioned was resolved and he was adequately satisfied with the resolution we reached during our conversation.  Prisoner Hoffman then stated "I am still going to make a very big deal out of this, resolved or not."  When asked why, prisoner Hoffman stated "I'm going to build a lawsuit and sue all of you, I want to make you all look as bad as possible so I can obtain money."  I inquired again about the issue and how the resolution was met at which point he confirmed again that the issue was resolved but he wants to fabricate a lawsuit against the State of Michigan.

> Prisoner Hoffman's own admittance of purposely making staff "look bad" to intentionally fabricate a lawsuit and his desire to turn resolved issues into large, attention gaining events is a blatant attempt to impede, disrupt and mislead the disciplinary process. . . .

> Prisoner Hoffman has chosen to proceed with his initial intentions after given a proper opportunity to adjust his behavior.

---

(3) the documents were filed in response to Crites' argument Plaintiff's grievance is frivolous because it fabricated an unresolved issue.

(ECF No. 18, PageID.77).

Crites asserts intentionally lying and fabricating a lawsuit and threating to fabricate a lawsuit constitutes "Interference with the Administration of Rules" pursuant to MDOC Policy 03.03.105B. (ECF No. 22-2, PageID.134, at ¶ 10). Interference with the Administration of Rules is a Class II Misconduct. (ECF No. 22-3at PageID.164-65). Pursuant to the MDOC Policy Directive, a violation of this rule is defined as "[a]cts intending to impede, disrupt, or mislead the disciplinary process for staff or prisoners, including failure to comply with a loss of privileges sanction imposed as a result of a misconduct guilty finding." (*Id.*). The policy directive includes a note: "if written as a result of a grievance, it must be shown that prisoner knew allegation was false when s/he made it and intentionally filed a false grievance." (*Id.*).

Plaintiff accepts for purposes of this motion only that he threatened filing a lawsuit. (ECF No. 18, PageID.75).

Plaintiff was found not guilty of the charge because the misconduct alleged did not meet the elements of the offense. (*Id.* at PageID.83).

## III.    ANALYSIS AND RECOMMENDATIONS

### A.    Standard of Review

When a party moves for summary judgment, it must be granted "if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party

asserting that a fact cannot be or is genuinely disputed must support the assertion

by: (A) citing to particular parts of materials in the record . . . ; or (B) showing that

the materials cited do not establish the absence or presence of a genuine dispute, or

that an adverse party cannot produce admissible evidence to support the fact."

Fed. R. Civ. P. 56(c)(1). The standard for determining whether summary judgment

is appropriate is "whether the evidence presents a sufficient disagreement to

require submission to a jury or whether it is so one-sided that one party must

prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d

433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

251-52 (1986).

If the movant establishes the lack of a genuine issue of material fact, the

burden of proving the existence of such an issue shifts to the non-moving party to

come forward with "specific facts showing that there is a genuine issue for trial."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In essence, the party

opposing a motion for summary judgment must make an affirmative showing with

proper evidence and must "designate specific facts in affidavits, depositions, or

other factual material showing 'evidence on which the jury could reasonably find

for the plaintiff.'" *Brown v. Scott*, 329 F. Supp. 2d 905, 910 (E.D. Mich. 2004).

To fulfill this burden, the non-moving party need only demonstrate the minimal standard that a jury could ostensibly find in his favor. *Anderson*, 477 U.S. at 248; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). When reviewing the facts, the Court "must view the factual evidence and draw all reasonable inferences in favor of the non-moving party." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005). Even so, mere allegations or denials in the nonmovant's pleadings will not satisfy this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 251.

 B. <u>Discussion</u>

  To establish a claim of First Amendment retaliation, a plaintiff must show (1) he engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct;[3] and (3) there is a causal connection between elements one and two; in other words, the adverse action was motivated at least in part by the plaintiff's protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). "Under the third element, 'the subjective motivation of the defendants is at issue.'" *Maben v. Thelen*, 887 F.3d 252, 262 (6th Cir. 2018) (quoting *Thaddeus-X*, 175

---

[3] Crites did not bring forth argument on this element. The undersigned thus assumes the misconduct ticket constitutes adverse action that would deter a person of ordinary firmness from engaging in protected conduct.

F.3d at 399).  The burden then shifts to the defendant, and "'[i]f the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment.'"  *Id.* at 267 (quoting *Thaddeus-X*, 175 F.3d at 399).

       1.    Protected Conduct

The undersigned assesses the verbal and written grievances and threat to sue separately.  Plaintiff argues his August 13, 2020, verbal and written grievances were legitimate, non-frivolous exercises of Constitutionally protected conduct because Crites and other staff members violated the prison's policy on that date by allowing inmates from different units to gather.  As he points out, his formal grievance was not treated as frivolous, but was addressed on the merits.  (ECF No. 18, PageID.66).  Crites maintains the grievances do not constitute protected conduct because the issue was resolved during their evening conversation on August 13, 2020, rendering any subsequent grievance frivolous.  (ECF No. 22, PageID.110-13).  Thus, according to Crites, the grievances were frivolous and impermissible.

Inmates have a First Amendment right to lodge grievances against prison officials, written or oral, on their own behalf.  *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000); *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018).  Merely threatening to file a legitimate grievance is also arguably protected conduct.  *See*

*Pasley v. Conerly*, 345 F. App'x 981, 985 (6th Cir. 2009) (citations omitted).

Since "[n]othing in the First Amendment itself suggests that the right to petition for

redress of grievances only attaches when the petitioning takes a specific form[,]"

*Holzemer v. City of Memphis*, 621 F.3d 512, 521 (6th Cir. 2010) (citation omitted),

informal grievances (such as Plaintiff's letters) and threats to sue may be protected

conduct as well.  *See Dean v. Conley*, 1999 WL 1045166, at *2 (6th Cir. Nov. 9,

1999) (threat to file lawsuit considered protected activity).  The right to lodge

grievances applies only to non-frivolous grievances.  *Herron*, 203 F.3d at 415.

"Abusive or manipulative use of a grievance system would not be protected

conduct."  *Maben*, 887 F.3d at 264 (quoting *King v. Zamaira*, 680 F.3d 868, 699

(6th Cir. 2012)).

Preliminarily, Plaintiff's verbal grievance to Crites the evening of August

13, 2020, is protected conduct.  Prisoners have a constitutional right to lodge oral

grievances.  Crites's argument that grievances lodged after his discussion with

Plaintiff are frivolous does not undermine the verbal grievance.  By Crites' own

argument and assertions, and by logic, the issue was not resolved (if it was) until

after the conversation in which Plaintiff voiced his complaints.  Thus, the argument

that the grievance was frivolous because it was resolved does not apply to the

verbal grievance.

The written grievances were lodged after the verbal grievance.  There is an issue of material fact here.  If the jury credits Crites' position and finds the parties resolved the issues after the verbal grievance, then the later grievances are arguably frivolous.  At least one judge has so concluded.  *See Brown v. Smith*, 2018 WL 6011243, at *4 (W.D. Mich. Nov. 16, 2018) ("Plaintiff's insistence on pursuing Step III of his institutional grievance after his complaint had been fully and finally resolved through the PREA grievance process is appropriately characterized as frivolous and abusive.").  Indeed, MDOC grievance policy provides a prisoner may file a Step I grievance if the issue is not resolved.  If, on the other hand, the jury concludes the issue was not resolved, then there is no basis to find Plaintiff's grievances were frivolous.  Crites' argument against finding the grievances are protected conduct relies on the grievance having been resolved.  Moreover, if the issue was not resolved, there is no basis in the record on which to conclude the content of the grievances—the COVID-19 policy violation—was frivolous.  Prison officials violated prison policy and the formal grievance was addressed on the merits through all three steps rather than denied as frivolous.

As for the threat of a lawsuit, the issue of fact is not material.  Even if the issue was resolved, the undersigned is not persuaded the threat to sue was frivolous or that the lawsuit would be fabricated.  The undersigned is unaware of a rule prohibiting prisoners from filing lawsuits about an issue resolved at the prison

level.  Thus, if the issue was resolved, that fact would not prevent Plaintiff from

suing.  Crites characterizes Plaintiff's threatened lawsuit as a fabricated lawsuit

because, as he argues, the issue was resolved.  But resolution at the prison level

does not mean the issue was fabricated.  Indeed, the record suggests the issue was

not fabricated all—Crites himself stated in an interrogatory response the prison

was on restricted movement on August 13, 2020.  As a result, mixing prisoners

from different units violated the policy.  Crites does not argue Plaintiff fabricated

the policy violation.[4]

### 2.    Causal Connection

Plaintiff argues the misconduct ticket itself is direct evidence of causation

since Crites wrote the ticket because Plaintiff threatened to sue and due to other

"attention gaining events."  (ECF No. 18, PageID.70).  Crites insists there is no

causation between Plaintiff's grievances and the ticket because he wrote the ticket

only for the threat to sue, not because of his grievances.  (ECF No. 22,

PageID.122-23).  Crites argues there is no causation between the threat to sue and

the ticket because the threat was only of a frivolous, fabricated lawsuit.

To establish the third element of Plaintiff's prima facie case, he must

establish the adverse action was motivated at least in part by Plaintiff's protected

---

[4] Whether the potential lawsuit would lack merit or result in only nominal damages at
best is not before the Court.

conduct.  The subjective motivation of the defendant matters here "because our concern is with actions by public officials taken with the intent to deter the rights to free expression guaranteed under the First Amendment." *King v. Zamiara*, 680 F.3d 686, 695 (6th Cir. 2012).  The Sixth Circuit described causation in this context as a two-part inquiry: "A plaintiff must show both (1) that the adverse action was proximately caused by an individual defendant's acts, . . . but also (2) that the individual taking those acts was 'motivated in substantial part by a desire to punish an individual for exercise of a constitutional right.'" *Id.* (citations omitted).  Motive may be difficult to prove with direct evidence, and in that instance, the Court may accept circumstantial evidence as the way to establish causation. *Id.*

There is a question at the outset related to Plaintiff's grievances.  Plaintiff argues the misconduct ticket was written in response to both his grievances and his threat to sue.  Crites maintains the ticket was written only for his threat to sue.  In the misconduct ticket, Crites mentioned Plaintiff was attempting to turn resolved issues into "attention gaining" events.  Whether this language is a reference to Plaintiff's grievances or only a potential lawsuit is unclear and is disputed.  Until this issue of fact is resolved, the undersigned cannot address causation.

There is also a question of material fact about Crites' motive in writing the ticket for the threat of a lawsuit.  The requisite motive to satisfy causation is not

14

simply a motive to cause an act to be done.  It must be a motive to retaliate, to

punish the prisoner for the exercise of protected conduct.  Crites asserts he did not

intend to retaliate against Plaintiff for protected conduct.  Rather, he states he

wrote the ticket because he believed Plaintiff's threat to sue violated prison rules.

Contrary to Plaintiff's assertion, motive is not evident on the face of the

misconduct ticket.  The issue here requires a credibility determination better suited

to a jury.

In light of the factual issues which remain on Plaintiff's retaliation claim

against Crites, Plaintiff's motion for partial summary judgment should be denied.

## IV.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that

Plaintiff's Motion for Partial Summary Judgment (ECF No. 18) be **DENIED**.

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and

Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health*

*and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  November 23, 2021                    s/Curtis Ivy, Jr.
                                            Curtis Ivy, Jr.
                                            United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the forgoing document was served upon the parties and/of counsel of record on November 23, 2021, by electronic means and/or ordinary mail.

s/Kristen MacKay
Case Manager
(810) 341-7850
