UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT HOFFMAN,

       Plaintiff,

vs.

CODY CRITES, et al.,

       Defendants.

_____/

Case No. 21-10703

HON. MARK A. GOLDSMITH

**OPINION & ORDER
(1) ACCEPTING THE RECOMMENDATION CONTAINED IN
THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION (Dkt. 25), (2)
OVERRULING PLAINTIFF'S OBJECTIONS (Dkt. 28), AND (3) DENYING
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Dkt. 18)**

This matter is before the Court on the Report and Recommendation (R&R) of Magistrate Judge Curtis Ivy, Jr. (Dkt. 25). In the R&R, the magistrate judge recommends that the Court deny Plaintiff Robert Hoffman's motion for partial summary judgment (Dkt. 18). Hoffman seeks summary judgment on his claim that Defendant Cody Crites retaliated against Hoffman in violation of Hoffman's First Amendment rights. Id. Hoffman filed a reply brief objecting to the R&R (Dkt. 28).[1] For the reasons that follow, the Court accepts the recommendation in the R&R, overrules Hoffman's objections, and denies Hoffman's motion for partial summary judgment.

**I. BACKGROUND**

---

[1] Oral argument will not aid the Court's decisional process, and the issues will be decided based on the parties' briefing and the R&R. See E.D. Mich. LR 7.1(f)(2). In addition to Hoffman's motion and objections, the briefing includes Defendants' response to Hoffman's motion (Dkt. 22) and Hoffman's reply (Dkt. 24).

During the timeframe relevant to this dispute, Hoffman was in the custody of the Michigan Department of Corrections (MDOC) and housed at the Parnall Correctional Facility (SMT). Am. Compl. ¶ 4 (Dkt. 17). Crites was employed by MDOC as a lieutenant at SMT. Id. ¶ 5.

As of August 13, 2020, SMT had a policy of keeping inmates from different units separated in light of the COVID-19 pandemic. See Reply in Supp. Mot. Partial Summ. J. at PageID.243–244 (containing Crites's responses to Hoffman's interrogatories).[2] Hoffman alleges that, when he was summoned to the Control Center to pick up legal mail on that date, he observed this policy being violated; there were approximately 15–20 inmates from different units concentrated in the Control Center. Am. Compl. ¶ 10. Hoffman states that he made an oral complaint about this policy violation to Defendants Crites and Corrections Officer JaVaughn Acree-Maual, who were stationed at that area of the prison, but his complaint was ignored. Id. ¶ 11.

Later that evening, Crites called Hoffman back to the Control Center to discuss his complaint. Id. ¶ 14. Hoffman made another oral grievance related to the COVID-19 policy violation. Id. The parties disagree about the substance of the rest of the conversation. Hoffman submits that the issue was not resolved, and that he informed Crites that he would be sending formal and informal grievances to the SMT Warden, Deputy Warden, and Assistant Deputy Warden about the policy violation. Id.; Mot. Partial Summ. J. at PageID.73, ¶¶ 3, 11. Crites

---

[2] Rather than file his exhibits separately, Hoffman included the exhibits to his motion and reply in the same filings as his motion and reply, and so the Court cites to Hoffman's motion and reply to reference those exhibits. Exhibits included in Hoffman's motion include Hoffman's declaration, see Mot. Partial Summ. J. at PageID.73–76; the misconduct report filed by Crites, see id. at PageID.77; Hoffman's written grievances and other submissions to MDOC relating to his grievances, see id. at PageID.78–82, 84; and the hearing report resulting from the misconduct report filed against Hoffman, see id. at PageID.83. Exhibits included in Hoffman's reply include Crites's responses to Hoffman's interrogatories, see Reply in Supp. Mot. Partial Summ. J. at PageID.243–244; MDOC grievance operating procedures, id. at PageID.249–255; the MDOC response to Hoffman's grievances, see id. at PageID.257–258; and Crites's memorandum regarding Hoffman's grievances, see id. at PageID.261.

believed that the issue had been resolved, and he maintains that he informed Hoffman that he would issue a Class II Misconduct for Interference with the Administration of Rules if Hoffman "continued his threatening behavior and abuse of the grievance process." Crites Aff. ¶ 9 (Dkt. 22-2).[3]

Hoffman subsequently submitted two grievances concerning the concentration of inmates in the Control Center: an informal letter to an administrative assistant at SMT, and a formal MDOC grievance. Mot. Partial Summ. J. at PageID.78, 79. In the latter, Hoffman detailed the alleged policy violation and stated that he had discussed the matter with Crites. Id. at PageID.79.

In an MDOC memorandum dated August 19, 2020 regarding the formal grievance, Crites reiterated his understanding that he and Hoffman had resolved the issue raised on August 13, 2020, but that Hoffman still insisted he would sue over the matter. Reply in Supp. Mot. Partial Summ. J. at PageID.261; see also Crites Aff. ¶ 8.

---

[3] Defendants assert that Crites "resolved" Hoffman's concerns when he "explained SMT processes to Hoffman that Hoffman was complaining about." Resp. to Mot. Partial Summ. J. at 2; see also Crites Aff. ¶ 7 ("I spoke with Hoffman about the issue. Once our facility processes were explained to Hoffman, Hoffman stated it all made sense and his issue was resolved."). Certain documents from the grievance-filing process further clarify that Crites thought the issue of inmates concentrating in the Control Center was resolved because SMT planned to reopen closed buildings and return to normal operations on August 14, 2020, the day after Hoffman filed his grievances. See Reply in Supp. Mot. Partial Summ. J. at PageID.261 (containing 8/19/20 memorandum authored by Crites asserting that Crites told Hoffman that "all movement would be normal" upon the reopening of closed buildings beginning August 14, 2020 and that Hoffman agreed the issue was "resolved"); id. at PageID.257 (containing MDOC grievance response supplemental form noting that Crites "informed prisoner Hoffman that effective on 8/14/20 all movement would be normal" due to buildings reopening and concluding that Hoffman's grievance was resolved because "the facility was back to normal operations" on August 14, 2020).

However, Crites's responses to Hoffman's interrogatories indicate that SMT did not lift restrictions on August 14, 2020. Reply in Supp. Mot. Partial Summ. J. at PageID.244 (containing Crites's August 31, 2021 statements that the prison was "still currently under restricted movement as of August 25, 2021" and that Crites was unaware of restrictions in fact being lifted on August 14, 2020).

MDOC issued a written denial of Hoffman's grievance. Reply in Supp. Mot. Partial Summ. J. at PageID.257–258 (observing that the "visiting room is a very large area making this an adequate area for prisoners to be separated by the six feet for social distancing, and stating, "On 8/14/20, the facility was back to normal operations. . . . The change in movement was pre-planned resulting in the resolution of prisoner Hoffman's initial complaint"). Id. at PageID.257.

On August 20, 2020, Crites wrote a Class II misconduct ticket against Hoffman for "Interference with the Administration of Rules." See Mot. Partial Summ. J. at PageID.77; see also Crites Aff. ¶ 10 (maintaining that intentionally lying, fabricating a lawsuit, and threatening to fabricate a lawsuit constitute "Interference with the Administration of Rules" pursuant to MDOC Policy 03.03.105B).[4] In that misconduct ticket, Crites identified Hoffman's misconduct as his behavior during their August 13, 2020 conversation in the Control Center, which he described in part as follows:

> The issue prisoner Hoffman mentioned was resolved and he was adequately satisfied with the resolution we reached during our conversation. Prisoner Hoffman then stated "I am still going to make a very big deal out of this, resolved or not." When asked why, prisoner Hoffman stated "I'm going to build a lawsuit and sue all of you, I want to make you all look as bad as possible so I can obtain money." I inquired again about the issue and how the resolution was met at which point he confirmed again that the issue was resolved but he wants to fabricate a lawsuit against the State of Michigan.
>
> Prisoner Hoffman's own admittance of purposely making staff "look bad" to intentionally fabricate a lawsuit and his desire to turn resolved issues into large, attention gaining events is a blatant attempt to impede, disrupt and mislead the disciplinary process . . . .

---

[4] The MDOC Policy Directive identifies "Interference with the Administration of Rules" as a Class II Misconduct. See MDOC Policy Directive at PageID.164–165 (Dkt. 22-3). A violation of this rule is defined as "[a]cts intending to impede, disrupt, or mislead the disciplinary process for staff or prisoners . . . ." Id. at PageID.164. The policy directive also notes: "if written as a result of a grievance, it must be shown that prisoner knew allegation was false when s/he made it and intentionally filed a false grievance." Id. PageID.164–165.

Mot. Partial Summ. J. at PageID.77. Hoffman was found not guilty of the misconduct charged in Crites's ticket. Id. at PageID.83.

Hoffman seeks summary judgment on his claim that Crites violated Hoffman's First Amendment rights when Crites issued Hoffman a misconduct ticket in retaliation for Hoffman's oral and written grievances and for his alleged threat to file a lawsuit. See Am. Compl. at PageID.51; Mot. Partial Summ. J.[5] Magistrate Judge Ivy recommends that the Court find that genuine issues of material fact preclude summary judgment on this claim, see R&R at 2, to which Hoffman objects, see Obj. at 1–3.

## II. ANALYSIS[6]

The Court reviews de novo any portion of the R&R to which a specific objection has been made. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); Alspaugh v. McConnell, 643 F.3d 162, 166 (6th Cir. 2011) ("Only those specific objections to the magistrate's report made to the district court will be preserved for appellate review; making some objections but failing to raise others will not preserve all the objections a party may have.") (punctuation modified). Absent a specific objection, the issue is waived. Willis v. Sullivan, 931 F.2d 390, 401 (6th Cir. 1991). Additionally, any issues raised for the first time in objections to an R&R are deemed waived. Uduko v. Cozzens, 975 F. Supp. 2d 750, 757 (E.D. Mich. 2013).

---

[5] Hoffman's complaint did not base a claim on his supposed threat to file a lawsuit. See Am. Compl. In his present motion, Hoffman "neither admits or [sic] denies" Crites's allegation that he threatened to file a lawsuit. Mot. Partial Summ. J. at 7. However, Hoffman accepts the allegation as true "[f]or the purpose of this motion ONLY," id., and he argues that any threat to file a lawsuit is protected conduct that provides an adequate basis for his First Amendment retaliation claim, id. at 5, 7–8.

[6] The Court applies the traditional summary judgment standard as articulated in Scott v. Harris, 550 U.S. 372, 380 (2007). The movant is entitled to summary judgment if that party shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). If the movant makes an initial showing that there is an absence of evidence to support the nonmoving party's case, the nonmovant can survive summary judgment only by coming forward with evidence showing there is a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324–325 (1986).

5

To succeed on his First Amendment retaliation claim, Hoffman must show that: "(1) [he] engaged in protected conduct; (2) an adverse action was taken against [him] that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by [Hoffman's] protected conduct." Maben v. Thelen, 887 F.3d 252, 262 (6th Cir. 2018) (punctuation modified). To prevail on the third prong, Hoffman must demonstrate both "(1) that the adverse action was proximately caused by an individual defendant's acts," and "(2) that the individual taking those acts was motivated in substantial part by a desire to punish [Hoffman] . . . for exercise of a constitutional right." King v. Zamiara, 680 F.3d 686, 695 (6th Cir. 2012) (punctuation modified).

Hoffman objects to the R&R's recommended findings on causation. Obj. at 1–3. Magistrate Judge Ivy found that genuine issues of material fact preclude finding a causal connection between (i) Hoffman's allegedly protected conduct, i.e., his filing of oral and written grievances and his alleged threat to sue; and (ii) Crites's adverse action, i.e., his filing of a misconduct ticket. R&R at 13–15. The magistrate judge concluded that Hoffman could not prevail on summary judgment on the second inquiry in the King causation analysis because there is "a question of material fact about Crites'[s] motive in writing the ticket for the threat of a lawsuit." Id. at 14. Because "Crites asserts he did not intend to retaliate against Plaintiff for protected conduct" but rather "believed Plaintiff's threat to sue violated prison rules," Magistrate Judge Ivy determined that the question of motive "requires a credibility determination better suited to a jury." Id. at 15.

Hoffman objects, asserting: "It[']s clear that Crites['s] intent was retaliatory to punish Hoffman for his 08-13-20 grievances . . . ." Obj. at 3. Hoffman reminds the Court that Crites's misconduct ticket alleged that Hoffman was trying to turn "resolved issues into large, attention gaining events." Id. at 2. He cites Crites's affidavit, in which Crites states that he told Hoffman that he would issue a misconduct ticket in direct response to Hoffman's "threatening behavior and abuse of the grievance process." Crites Aff. ¶ 9. Hoffman asks, and answers: "what other 'alleged'

6

resolved issue was there at stake here but his 08-13-20 verbal, informal and formal written grievances? None!" Obj. at 2–3.

The facts that Hoffman cites establish an absence of disputed fact only as the first step of the inquiry—that is, whether Hoffman's grievances and alleged threat to sue "proximately caused" the writing of the misconduct ticket. King, 680 F.3d at 699 (punctuation modified). The Court agrees with Hoffman that Crites's decision to write the misconduct ticket was a foreseeable result of—and was thus proximately caused by—some combination of Hoffman's grievances and threat to sue. See Goodell v. Ervin, No. 1:20-CV-11322, 2022 WL 187796, at *6 (E.D. Mich. Jan. 19, 2022). This conclusion is clear on the face of Defendants' own pleadings, as well as Crites's misconduct ticket and affidavit.[7]

However, Hoffman is unable to show an absence of disputed material facts relevant to the latter half of the causation analysis. The second prong of the causation inquiry examines the defendant's "[s]ubjective motivation," an analysis which "requires asking whether the individual in question believed the [plaintiff] to be abusing the system . . . ." King, 680 F.3d at 699 (emphasis in original). Crites is not liable under a First Amendment retaliation charge if he "subjectively believed [Hoffman] was abusing the grievance system or was otherwise disruptive or manipulative in any way that would entitle [Crites] to initiate punitive action against him." Id.; see also Griffin v. Berghuis, 563 F. App'x 411, 416 (6th Cir. 2014) ("[P]rison officials may take action in response to the prisoner's improper use of the grievance process as long as the response aligns with a legitimate penological goal.").

---

7 See Resp. to Mot. Partial Summ. J. at 3 (noting that Crites told Hoffman he would issue a misconduct ticket "if [Hoffman] chose to continue his threatening behavior and abuse of the grievance process" and asserting that Hoffman "chose to continue to lie and fabricate grievances to build a lawsuit"—"[a]s a result of" which, Crites issued the ticket) (emphasis added); Mot. Partial Summ. J. at PageID.77 (alleging in misconduct ticket that Hoffman threatened to "fabricate a lawsuit" and endeavored "to turn resolved issues into large, attention gaining events"); Crites Aff. ¶ 9 ("I informed Hoffman that I would be issuing him a Class II Misconduct . . . if he chose to continue his threatening behavior and abuse of the grievance process."); id. ¶ 11 (stating that, before Crites issued Hoffman a misconduct ticket, Hoffman "chose to continue to lie and fabricate grievances regarding a resolved issue to build a lawsuit").

Hoffman's assertion that Crites intended to "punish" him for protected conduct is in tension with the factual record. Obj. at 3. Crites's affidavit provides support for his position that he wrote the misconduct ticket in response to Hoffman's "abuse of the grievance process," Crites Aff. ¶ 9, and in response to Hoffman's decision "to lie and fabricate grievances . . . to build a lawsuit," id. ¶ 11. If Crites truthfully "<u>believed</u> [Hoffman] to be abusing the system"—as Crites continues to insist—then Hoffman cannot prove the causation prong of his First Amendment retaliation claim. King, 680 F.3d at 699 (emphasis in original). A material question of fact remains open on this point, and so summary judgment should be denied. See, e.g., Jamie v. Jenkins, No. 19-CV-10595, 2020 WL 7770893, at *12 (E.D. Mich. Dec. 30, 2020) (denying summary judgment on prisoner's First Amendment retaliation claim where it was "proper for a jury to interpret" disputed facts relating to defendant sheriff's motive for designating plaintiff with a job assignment).

Hoffman's remaining objection on causation fails to change this analysis. Hoffman disputes that there is a genuine issue of material fact as to whether Crites wrote the misconduct ticket "'only for 'Hoffman[']s] threat to sue,'" or for both Hoffman's threat to sue and his filing of grievances. Obj. at 1 (quoting R&R at 13). Whatever the result, genuine questions of material fact remain on causation. In other words, Hoffman cannot demonstrate at this stage that Crites had the requisite motive to retaliate against Hoffman either for Hoffman having threatened to sue or for his having filed grievances. As a result, Hoffman cannot prove each of the necessary elements to prevail on his First Amendment retaliation claim.

### III. CONCLUSION

For the foregoing reasons, the Court adopts the recommendation contained in the magistrate judge's R&R (Dkt. 25), overrules Hoffman's objections (Dkt. 28), and denies Hoffman's motion for partial summary judgment (Dkt. 18).

SO ORDERED.

Dated: March 23, 2022                                     s/Mark A. Goldsmith
    Detroit, Michigan                              MARK A. GOLDSMITH
                                                            United States District Judge