UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT HOFFMAN,
    Plaintiff,
    v.

CODY CRITES, JAVAUGHN
ACREE-MANUAL, and JOHN
MORRELL,
    Defendants.

_____/

Case No. 21-10703

Mark A. Goldsmith
United States District Judge

Curtis Ivy, Jr.
United States Magistrate Judge

**REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT (ECF No. 64)**

## I.    PROCEDURAL HISTORY

Plaintiff Robert Hoffman filed this *pro se* prisoner civil rights suit on

December 1, 2020.  (ECF No. 1).  After the close of the discovery period,

Defendants moved for summary judgment.  (ECF No. 64).  The motion is fully

briefed.  (ECF Nos. 68, 71).  This case was referred to the undersigned for all

pretrial proceedings.  (ECF No. 13).

For the reasons discussed below, the undersigned recommends that

Defendants' motion for summary judgment be granted in part and denied in part.

## II.    CONTESTED AND UNCONTESTED FACTS

As of August 13, 2020, Parnall Correctional Facility ("SMT"), where

Plaintiff was incarcerated and Defendants worked, was under COVID-19

lockdown procedures.  This included a prison-wide policy prohibiting the congregation of inmates from different units in any area of the prison.  (ECF No. 24, PageID.243-44).  The evening of August 13, 2020, Plaintiff was called to the control center to pick up legal mail.  When he arrived, prisoners from different units were in the control center together.  (ECF No. 17, PageID.47, ¶ 10).

Plaintiff was unhappy about the lockdown policy violation.  It is here that the parties' versions of events diverge.  Plaintiff says he tried to resolve the issue in the control center by "politely" talking to Defendant Crites.  Crites told Plaintiff to talk to Acree-Manual, who directed Plaintiff back to Crites.  Plaintiff did not talk to Crites again, and instead returned to his unit and started writing an informal and a formal grievance about the policy violation.  (ECF No. 68, PageID.831).  Later that evening, Crites called Plaintiff back to the control room to discuss the issue. He lodged a verbal grievance to Crites and told Crites he would be filing a grievance about the issue.  Plaintiff insists the matter was not resolved that evening.  (*Id.* at PageID.48, ¶ 14).

According to Crites, the first time Plaintiff left the control center, he was yelling.  Crites heard him say "fucking" and "idiots."  Later, Crites learned of Plaintiff's complaint about the COVID-19 policy violation.  He called Plaintiff back to the control center where he explained facility processes to Plaintiff.  He says that Plaintiff said it made sense and that his issue was resolved.  Despite the

issue being resolved, Plaintiff said "I am still going to make a very big deal out of this, resolved or not. . .   I'm going to build a lawsuit and sue all of you, I want to make you all look as bad as possible so I can obtain money." (ECF No. 22-2, PageID.133-34).  From Crites' perspective, Plaintiff intended to fabricate a lawsuit on an issue he agreed was resolved.  He told Plaintiff that he would issue a Class II Misconduct for Interference with the Administration of Rules ("IARM") if he continued his threatening behavior and abuse of the grievance process.  (*Id.* at PageID.135, ¶ 9).  Intentionally filing a false grievance violates prison rules. Plaintiff filed a grievance about the policy violation, so Crites issued the IARM ticket.  (*Id.* at ¶ 12).

The IARM ticket was dismissed after Plaintiff was found not guilty because the misconduct "did not meet the elements of the charge."  (*Id.* at PageID.142).

The next issue involves a JPay message from Plaintiff to Christina Mee outside the prison sent on August 16, 2020.  JPay messages are essentially emails through a service Jpay offered that are screened by prison or JPay personnel. Plaintiff was issued an "insolence" misconduct for the content of that message. Plaintiff described the message as containing "critical demeaning things about Crites and another staff member," but not containing threats of violence.  (ECF No. 17, PageID.48, ¶ 15).  Specifically, Plaintiff wrote about the prison policy violation and referred to Crites and another officer as "dumbass[es]" and "idiots."  (ECF No.

22-2, PageID.145).  The insolence ticket was written because the message

contained words "intended to harass [or] degrade" an employee.  (ECF No. 22-3,

PageID.164, MDOC Policy Directive 03.03.105B(426).  A "Common Example" of

insolence in the policy directive is "[u]sing abusive language to refer to an

employee; writing about or gesturing to an employee in a derogatory manner."

(*Id.*).  Plaintiff sues Defendant Morrell for censoring this message, but there is no

factual development on this point.  (ECF No. 17, PageID.52, Counts 4 and 6).

The final set of events giving rise to this lawsuit involves Defendant Acree-

Manual.  On August 17, 2020, prisoners from Plaintiff's unit were called to the

control center for legal mail, but not Plaintiff.  Plaintiff was called to the control

center around 9 pm, which he says is late and unusual.  When he arrived he was

taken to the visiting room where Acree-Manual threatened him with physical

violence for sending kites and grievances.  (*Id.* at PageID.49, ¶ 16-18).  Acree-

Manual says that Plaintiff was called with the other prisoners, but he did not show

up.  He asserts that he was dealing with "ride-ins" and assisting with shift

command at that time.[1]  Later that night, Acree-Manual noticed Plaintiff had not

gotten his legal mail, so he called him to the control center.  He says he "always

---

[1] Citing a FOIA response, Plaintiff asserts there were no ride-ins on August 17, 2020, casting doubt on the veracity of Acree-Manual's statement.  This dispute is not material to the analysis below.

conducted [himself] professionally when talking to Hoffman."  (ECF No. 64-2,

PageID.714-15).

## III.   ANALYSIS AND RECOMMENDATIONS

### A.   Governing Standards

Summary judgment is mandated "after adequate time for discovery and upon

motion, against a party who fails to make a showing sufficient to establish the

existence of an element essential to the party's case, and on which that party will

bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

(1986).  A motion for summary judgment shall be granted "if the movant shows

that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it might

affect the outcome under governing law.  *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 248 (1986).  When evaluating a motion for summary judgment, the

Court "views the evidence, all facts, and any inferences that may be drawn from

the facts in the light most favorable to the nonmoving party."  *Pure Tech Sys., Inc.*

*v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of

material fact exists. . . ."  *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486

(6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing

if a party "fails to properly address another party's assertion of fact," then the court

may "consider the fact undisputed for purposes of the motion"). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp*., 256 F.3d 446, 453 (6th Cir. 2001) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986)). The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Lee v. Metro. Gov't of Nashville & Davidson Cty*., 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts, there must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citation omitted). In other words, summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case. . . ." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

That Plaintiff is *pro se* does not reduce his obligations under Rule 56. Rather, "liberal treatment of *pro se* pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr*., 201 F. App'x 338, 344 (6th Cir. 2006). In addition, "[o]nce a case has progressed to the summary

judgment stage, . . . 'the liberal pleading standards under *Swierkiewicz* [*v. Sorema, N.A.*, 534 U.S. 506, 512-13 (2002)] and [the Federal Rules] are inapplicable.'" *Tucker v. Union of Needletrades, Indus. & Textile Emps.*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)). The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a *pro se* litigant does not alter [this] duty on a summary judgment motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a *pro se* plaintiff because he "failed to present any evidence to defeat the government's motion").

B.   Discussion

1.   First Amendment Retaliation Against Crites

Crites wrote the IARM in response to Plaintiff's formal grievance and the insolence ticket in response to Plaintiff's JPay message. Plaintiff contends that these tickets were retaliatory and violate the First Amendment.

To succeed on a First Amendment retaliation claim, a plaintiff must show that: (1) he engaged in protected conduct; (2) an adverse action was taken against him that would "deter a person of ordinary firmness from continuing to engage in that conduct"; and (3) the adverse action was motivated by the protected

conduct.  *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).  To prevail on a retaliation claim, retaliatory motive "must be a 'but-for' cause [of the injury], meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive."  *Nieves v. Bartlett*, 139 S. Ct. 1715, 1721 (2019).

An IARM ticket was issued because of a grievance, thus all three elements of a retaliation claim are present.  Crites argues that Plaintiff's informal and formal grievances are not protected activity, however, because they were frivolous; they were frivolous because the issue was resolved when the two spoke on August 13, 2020.  (ECF No. 68, PageID.692-94).  Prison policy dictates that a prisoner may file a grievance *if the issue is not resolved informally first*.  (ECF No. 64-3, PageID.722 MDOC Grievance Policy 03.02.130(Q)).  Filing a frivolous grievance is not protected conduct.  *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001).

There is a question of material fact as to whether the issue was resolved on the evening of August 13, 2020, when Plaintiff and Crites spoke in the control center about the COVID-19 policy violation.  If Crites' version of events is accepted by the trier of fact, then the issue was resolved and Plaintiff filed a grievance on a resolved issue in violation of prison policy.  If Plaintiff's version is accepted, the issue was not resolved, so Plaintiff complied with policy and filed the grievance.  Notably, Plaintiff was found not guilty and the IARM was dismissed because the charge did not meet the elements of the violation.

Crites insists that Plaintiff's threat to file a lawsuit was not protected activity because he was threatening to sue over an issue that was resolved.  (ECF No. 64, PageID.694-95).  This argument has no merit.

Filing a civil rights lawsuit generally constitutes protected activity.  *Dean v. Conley*, 198 F.3d 244, at *2 (6th Cir. 1999) ("A prisoner has a First Amendment right of access to the courts, including the filing of civil rights claims.") (table decision); *Hedlund v. Jones*, 2022 WL 1590673, at *3 (W.D. Mich. May 19, 2022) ("Filing a civil rights lawsuit constitutes protected conduct.") (citing *Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002)).  Threats to sue can also be protected conduct.  *Hoffman v. Crites*, 2021 WL 8013873, at *4 (E.D. Mich. Nov. 23, 2021), *report and recommendation adopted*, 2022 WL 866400 (E.D. Mich. Mar. 23, 2022) ("and threats to sue may be protected conduct as well.") (citing *Dean*, 198 F.3d at *2).  A lawsuit is frivolous when the suit "lacks an arguable basis in law or in fact."  *Goodell v. Anthony*, 157 F. Supp. 2d 796, 799 (E.D. Mich. July 31, 2001) (citing *Neitzke v. Williams*, 490 U.S. 319, 325 (1989)); *Frivolous*, Black's Law Dictionary (11th ed. 2019) ("[l]acking a legal basis or legal merit; manifestly insufficient as a matter or law.").  "A complaint lacks an arguable basis in law or fact if it . . . is based on legal theories that are indisputably meritless."  *Brown v. Bargery*, 207 F.3d 863, 866 (6th Cir. 2000).  Crites made no showing that a lawsuit claiming prisoners were mixed in a room in violation of prison policy during a

pandemic would have been frivolous.  Crites says Plaintiff threatened to *fabricate* a lawsuit, but the parties do not dispute that prisoners from different units were mixed during the time when prison policy prohibited them from doing so.  In other words, there is no explanation of which conduct Plaintiff threatened to concoct to form a lawsuit.  It appears he was threatening to sue over something that in fact occurred and was not fabricated.

And a lawsuit filed on a resolved grievance issue is not necessarily frivolous. Pursuant to prevailing jurisprudence, there is no rule or law that provides an issue resolved during the administrative process at the prison cannot later form the basis of a lawsuit.  Prisoners are directed to attempt to resolve issues before filing grievances presumably to avoid the time and resources expended during the grievance process and, of course, to resolve an issue raised by a prisoner. Resolving the issue at the prison does not render a potential civil rights violation null.

Crites also argues that Plaintiff cannot establish but-for causation.  (ECF No. 64, PageID.697-98).  There is no development of this argument.  The undersigned rejects the argument.  There can be no question that Crites would not have written the IARM ticket but for Plaintiff filing the grievance.

If the plaintiff establishes the three elements of a retaliation claim, the burden of production then shifts to the defendants to show that their actions would

not have been different absent the plaintiff's protected conduct. *Mount Healthy City Sch. Dist. Bd. Of Educ. v. Doyle*, 429 U.S. 274 (1977). Even so, summary judgment is warranted only if, in light of the evidence viewed in favor of the plaintiff, no reasonable juror could fail to return a verdict for the defendant. *Dye v. Office of the Racing Com'n*, 702 F.3d 286, 294-295 (6th Cir. 2012). "Unlike in the *McDonnell Douglas* burden-shifting framework, the burden does not shift back to a plaintiff to show pretext in First Amendment retaliation claims." *Id.* at 295. Assessing subjective motivation is a two-part inquiry.

> [P]rotected speech causes an adverse action if the speech motivates an individual actor to take acts that then proximately cause an adverse action. Subjective motivation appropriately enters the picture on a retaliation claim because our concern is with actions by public officials taken with the intent to deter the rights to free expression guaranteed under the First Amendment. *Block v. Ribar*, 156 F.3d 673, 681-82 (6th Cir. 1998) ("[A]n act taken in retaliation for the exercise of a constitutionally protected right is actionable under § 1983 even if the act, when taken for a different reason, would have been proper.") (internal quotation marks omitted). Thus, causation in retaliatory claims may really be considered a two-part inquiry: A plaintiff must show both (1) that the adverse action was proximately caused by an individual defendant's acts, *Siggers–El v. Barlow,* 412 F.3d 693, 702 (6th Cir. 2005), but also (2) that the individual taking those acts was "motivated in substantial part by a desire to punish an individual for exercise of a constitutional right," *Thaddeus–X,* 175 F.3d at 386

*King v. Zamiara*, 680 F.3d 686, 695 (6th Cir. 2012).

Considering the first prong, the IARM ticket was written because Plaintiff filed a grievance and threatened a lawsuit; there is a question of fact as to whether that conduct was protected conduct. What remains is whether Crites met his burden by establishing that he was not "motivated in substantial part" by retaliatory animus such that no reasonable jury could find for Plaintiff.

Crites insists he has shown a non-retaliatory basis for the IARM ticket. He states that he wrote the ticket because, according to Crites' own affidavit, Plaintiff "acknowledged the fraudulent nature of his actions and his intent to fabricate a lawsuit, which Crites perceived to be a rule violation, and for no other reason." (ECF No. 64, PagteID.700). The undersigned recognizes that it would be difficult for Crites to produce evidence that he would have charged Plaintiff with the IARM without any filing of a grievance or threatening a lawsuit. Drawing reasonable inferences in Plaintiff's favor, however, the undersigned finds a genuine issue of material fact as to whether Crites was subjectively motivated by a desire to punish Plaintiff for exercising a constitutional right. Not only has Plaintiff sworn under penalty of perjury that the issue was not resolved before filing his grievance, but the record contains circumstantial evidence that could been taken in Plaintiff's favor. One is that the IARM was dismissed because Crites' charge did not meet the elements of the allegation. Next is the Interference with the Administration of Rules policy itself. Yes, the policy provides for a Class II misconduct for acts

12

impeding, disrupting, or misleading the disciplinary process for staff or prisoners. But the policy goes further.  It states: "NOTE: If written as result of a grievance, it must be shown that prisoner knew allegation was false when s/he made it and intentionally filed a false grievance.  Ordinarily, the statement of staff member refuting the claim will not be sufficient."  (ECF No. 22-3, PageID.164-65).  This suggests that prison officials are aware of the need to uphold the right to redress grievances and that issuing a misconduct ticket for exercising that right requires a balance.  Crites evidently failed to show that Plaintiff knew the grievance was false (in that it was resolved), relying on his own statements, since the ticket was dismissed.  He apparently had only his statement, which is not considered sufficient under the policy, yet still charged Plaintiff with violating the policy.

In sum, Crites' motion for summary judgment should be denied as to the IARM retaliation claim.

Plaintiff alleges that the insolence ticket Crites wrote after Plaintiff sent the JPay message was retaliation for sending the message.  Crites argues that the message was not protected activity because it contained demeaning words in violation of prison policy.  (ECF No. 64, PageID.695-96).  Plaintiff appears to argue that this ticket was retaliatory because Crites and Acree-Manual did not write him an insolence ticket other times they accused him of being insolent.  He finds it suspicious that this ticket was written after he filed a grievance and other

informal complaints.  (ECF No. 68, PageID.824).  Plaintiff submitted an affidavit

from another prisoner who asserts that on August 20, 2020, he overheard Crites tell

Plaintiff that he wrote the insolence ticket because of letters, grievances, JPay

messages, and Plaintiff's hunger strike.  (ECF No. 68, PageID.849).

As with the IARM, Crites wrote the insolence ticket because of the content

in the JPay message to Ms. Mee.  On the facts presented, Crites was justified.

Plaintiff referred to Crites and another officer as a "dumbass" and "idiots."  These

statements violate MDOC Policy Directive 03.03.105B(426).  Plaintiff "[u]s[ed]

abusive language to refer to an employee . . . [and] wr[ote] about . . . an employee

in a derogatory manner."  (*Id.*).  "[I]f a prisoner violates a legitimate prison

regulation, he is not engaged in 'protected conduct.'"  *Smith*, 250 F.3d at 1037.  It

does not matter that Crites did not write insolence tickets on other occasions when

Plaintiff was insolent.  Plaintiff was insolent in his message to Mee, so Crites

wrote a ticket.  The insolent message violated prison rules, and therefore does not

constitute protected conduct.  Summary judgment should be awarded to Crites on

this claim.

2.     First Amendment Free Speech - JPay Message

Plaintiff alleges that Crites and Morrell applied the insolence policy in a

manner that violated his First Amendment right to free speech.  He also alleges

14

Morrell suppressed or censored his speech in a way that did not invoke penological interests.  (ECF No. 17, PageID.52).

The First Amendment prohibits the government from "abridging the freedom of speech."  U.S. Const. amend. I.  Prisoners do not surrender all their First Amendment rights when they enter custody, but their "free speech rights are uncontrovertedly limited by virtue of their incarceration."  *Thaddeus-X v. Blatter*, 175 F.3d at 392.  "[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system."  *Pell v. Procunier*, 417 U.S. 817, 822 (1974).  Thus, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."  *Turner v. Safley*, 482 U.S. 78, 89 (1987).  Under *Turner*, in determining the reasonableness of the regulation at issue, four factors come into play:

> (1) whether there exists a "'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it,"
>
> (2) whether there are "alternative means of exercising the right that remain open to prison inmates,"
>
> (3) the "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally," and

> (4) the availability of a "ready alternative . . . that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests."

A "trial court is not required to weigh evenly, or even consider explicitly, each of the four *Turner* factors." *Spies v. Voinovich*, 173 F.3d 398, 403 (6th Cir. 1999). Rather, the four factors are "simply 'relevant' to the ultimate inquiry a court must undertake" in "determining whether a prison regulation is 'reasonably related to legitimate penological interests.'" *Id.* (quoting *Turner*, 482 U.S. at 89). The Court accords deference to prison authorities in the administration of the prison. *Turner*, 482 U.S. at 89.

Plaintiff did not address his free speech claims in his response brief.

The whole of Crites' argument is that the prison regulation is rationally connected to the legitimate interest in prison and officer safety. He explains that prisoners outnumber staff, and that if a prisoner could speak to custody staff in a way that harassed or degraded them, rehabilitation would be hampered and control of the facility could be lost. (ECF No. 64, PageID.707-08). This is a reasonable summation of the importance of the regulation, a summation that is unrebutted by Plaintiff. Crites also states that there were other means available to communicate his thoughts to Ms. Mee—United States Postal Service mail, prisoner telephone services, and in-person visits. (*Id.* at PageID.703). The undersigned notes that the regulation's "common example" of insolence violated here is writing about an

employee in a derogatory manner, so mailing the communication likely would have violated the regulation.  Even assuming Plaintiff talking to Ms. Mee and calling Crites a "dumbass" or an "idiot" would violate the rule.  But the prison has a legitimate and rational reason to prohibit that kind of language in the prison.  Nor is there any indication that Plaintiff could not have expressed his sentiments related to the COVID-19 policy violation without using the derogatory terms in his message.

Finally, Crites argues that the prison could not allow insolent speech from prisoners in any alternative form because "[i]f respect is not expected, custodial staff would need to exert more power to maintain an equal amount of control over the prison environment."  (*Id.* at PageID.707) (citing *Caldwell v. Moore*, 968 F.3d 595, 601 (6th Cir. 1992)).  Plaintiff did not rebut this reasonable assertion.  Thus, on balance, the undersigned suggests that Plaintiff's freedom of speech was not infringed on in a way that violates the Constitution.  Summary judgment should be granted on the free speech claims.

### 3.    Claims Unaddressed by Defendants

Defendant Crites did not address Plaintiff's claim that Crites retaliated against him with verbal assaults, threats of misconduct tickets, and threats of bodily harm on August 19 and 20, 2020.  (ECF No. 17, PageID.52).  Acree-Manual did not address Plaintiff's claim that he retaliated against Plaintiff with

threats of serious bodily harm.  The undersigned will not address these claims in the first instance, so they remain in this litigation.

4.    Qualified Immunity

After stating the standard for qualified immunity, Defendants assert they are entitled to immunity because they did not violate Plaintiff's First Amendment rights.  As addressed above, on the claims that remain, there are issues of material fact bearing on the question whether Defendants violated Plaintiff's constitutional rights.  Thus, the Defendants are not entitled to qualified immunity (though they also did not address whether the right in issue was clearly established, a necessary showing for qualified immunity to apply, *see Saucier v. Katz*, 533 U.S. 194 (2001)).

5.    Conclusion

The undersigned recommends that Defendants' motion for summary judgment be denied as to the First Amendment retaliation claims unrelated to the JPay message, granted as to the JPay message retaliation claims, and granted as to the First Amendment free speech claims.  Defendants did not move for summary judgment on Plaintiff's claims that Crites and Acree-Manual retaliated against Plaintiff with threats of violence (both Defendants) and verbal assaults and threats of misconduct tickets (Crites).  If this report and recommendation is adopted,

Defendant Morrell should be dismissed because only Free Speech claims were raised against that Defendant.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that Defendants' motion for summary judgment (ECF No.  64) be **GRANTED IN PART, DENIED IN PART**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Loc. 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

<div style="margin-left: 2em;">

Date:  October 12, 2023.                    s/Curtis Ivy, Jr.
                                            Curtis Ivy, Jr.
                                            United States Magistrate Judge

</div>

## CERTIFICATE OF SERVICE

The undersigned certifies that this document was served on counsel of
record and any unrepresented parties via the Court's ECF System or by First Class
U.S. mail on October 12, 2023.

<div style="margin-left: 2em;">

s/Sara Krause
Case Manager
(810) 341-7850

</div>